M. David Graubard, Esq.  
Attorney for CNG Foods LLC, Alleged Debtor  
71-18 Main Street  
Flushing, NY 11367  
(212) 681-1436

Return Date: 11/17/16 at 11:00 a.m.

UNITED STATES BANKRUPCTY COURT  
EASTERN DISTRICT OF NEW YORK  
-----------------------------------------------------------x  
In re

CNG FOODS LLC,

               Debtor.  
-----------------------------------------------------------x

Chapter 11  
Case No. 16-43278

## MOTION TO DISMISS INVOLUNTARY PETITION AND FOR SANCTIONS

PLEASE TAKE NOTICE that upon the annexed Certification of Deena Zaitschek, dated September 16, 2016 and the exhibits annexed thereto, and the subscription of M. David Graubard, Esq. at the end of that Certification, made on September 16, 2016; and upon all the papers previously filed in this involuntary bankruptcy case; a motion will be made before the Honorable Nancy Hershey Lord, 3rd floor, U.S. Courthouse, 271 Cadman Plaza East, Brooklyn, NY 11201, on November 17, 2016 at 11:00 a.m. for this Court to make an order dismissing the involuntary petition filed herein pursuant to Bankruptcy Code §303 of the Bankruptcy Code on the basis inter alia that claims of all the alleged creditors are subject to bona fide dispute and that the summons and involuntary petition were never properly served; together with the imposition of sanctions pursuant to Bankruptcy Code §303(i) and F.R.B.P. 9011, on the basis inter alia that the involuntary petition was filed to harass the debtor and as an improper litigation tactic; together with other and further relief as may be proper.

1

PLEASE TAKE FURTHER NOTICE that responses, if any, shall be served and filed in accordance with the Electronic Filing Procedures of the Eastern District of New York, so that the same are <u>received</u> by counsel for the Movant with a chambers copy to be <u>received</u> by the Honorable Nancy Hershey Lord, on or before November 3, 2016.

Dated:    Flushing, New York
September 16, 2016

                      M. DAVID GRAUBARD, ESQ.
                      Attorney for Alleged Debtor

By: _____
       M. David Graubard (MDG 5442)
       71-18 Main Street
       Flushing, NY  11367
       (212) 681-1436
       dgraubard@keragraubard.com

To:    BARRY R. FEERST & ASSOCIATES
       Counsel for Petitioning Creditors and
        Petitioning Creditor
       194 South 8th Street
       Brooklyn, NY  11211
       (718) 384-9111

       OFFICE OF U. S. TRUSTEE
       201 Varick Street, Room 1006
       New York, NY  10004

M. David Graubard, Esq.
Attorney for CNG Foods LLC, Alleged Debtor
71-18 Main Street
Flushing, NY 11367
(212) 681-1436

UNITED STATES BANKRUPCTY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

                                    Chapter 11
CNG FOODS LLC,                       Case No. 16-43278

                    Debtor.
------------------------------------------------------------x

### CERTIFICATION IN SUPPORT OF MOTION
### TO DISMISS INVOLUNTARY PETITION AND FOR SANCTIONS

      Deena Zaitschek a/k/a Faiga D. Fogel, hereby certifies the following to be true under the penalties of perjury:

      1.     Affirmant is the sole manager and member of the alleged debtor CNG Foods LLC ("CNG"). Affirmant makes this Certification based upon her own personal knowledge and information, and the records of the Supreme Court of the State of New York, County of Kings.

      2.     Affirmant makes this Certification in support of the motion of CNG to dismiss the involuntary petition.

      3.     CNG is a domestic limited liability, having been formed by a filing with the Secretary of State of New York on April 17, 2008.

      4.     CNG is the business of operating a restaurant known as Carlos and Gabby's, located at 1376 Coney Island Avenue, Brooklyn, New York ("Restaurant").

1

Affirmant operates the Restaurant through a license agreement with Carlos and Gabby's, Inc. made in about April, 2009 ("License Agreement").

5. Affirmant has operated the Restaurant for over six years, during which time Affirmant was married to David Zaitschek ("David").

## STATE COURT LITIGATION

6. The involuntary petition was filed as part of a scheme to try to steal CNG from Affirmant, which scheme eventually led to a hearing in the Supreme Court, Kings County before the Honorable Sylvia G. Ash for contempt of Court against David and other entities and the persons who will be enumerated herein, which was scheduled for July 27, 2016 ("Contempt Hearing"). A copy of the Order to Show Cause for Contempt in a civil action made by Justice Ash is annexed hereto as Exhibit A. The involuntary petition was filed on July 26, 2016 for the sole purpose of obtaining an automatic stay to prevent the state court from hearing the contempt motion.

7. On April 6, 2016, David, together with his cohort Ari Stern ("Stern") and their counsel Barry R. Feerst ("Feerst"), made an application to Justice Ash for an Order to Show Cause to preliminarily enjoin Affirmant from entering the Restaurant, with a Temporary Restraining Order ("TRO") that would enjoin Affirmant from entering the Restaurant pending a hearing on the Order to Show Cause.

8. Prior thereto, on April 4, 2016, Feerst commenced an action entitled "<u>CNG Foods LLC, Plaintiff vs. Deena Zaitschek, Defendant</u>," Supreme Court, Kings County, index number 3322/2016 by the filing of a Summons with Notice, a copy of which is annexed hereto as Exhibit B.

9. That summons was never served upon me and no complaint was ever filed with the Court or served upon me. The Order to Show Cause made on April 6, 2016 ("First OTSC") was based upon fabrications and lies to the Court. A copy of the First OTSC is annexed hereto as Exhibit C. Amongst other things, the fabrications and lies consisted of the following:

 (a) A falsified copy of the License Agreement;

 (b) A falsely made sworn statement that David was a principal of CNG;

 (c) A questionable handwritten agreement dated March 27, 2016 which very simply called for me to "give away the store" to David, Stern and another gentleman named Isaac Shteirman ("Shteirman");

 (d) A statement that David is in control is CNG and allegations that Affirmant was diverting funds which belonged to CNG and interfering with the performance of the employees at CNG from doing their jobs.

10. In response to the First OTSC, my attorney Jason B. Shanbaum, Esq. ("Shabaum") obtained a separate Order to Show Cause made by Justice Ash on April 20, 2016 that sought to vacate the temporary stay granted by the First OTSC and sought a restraining order against David, Stern, Shteirman and their representatives from entering and interfering with the Restaurant. This Order to Show Cause was made on April 20, 2016 ("Second OTSC"), and a copy is annexed hereto as Exhibit D. In the Second OTSC, Justice Ash specifically lifted the T.R.O. that was granted in the First OTSC.

11. In support of the Second OTSC, Affirmant explained to Justice Ash the following:

3

(a) Affirmant was the sole owner and manager of CNG.

(b) Affirmant had never agreed to any transfer of Affirmant's ownership of the business to any other party, including, without limitation, David;

(c) CNG did not owe the debts allegedly stated by David and his cohorts in the papers submitted to Justice Ash;

(d) David, Stern and Shteirman attempted to take advantage of Affirmant and steal CNG in which Affirmant had invested so much time and money;

12. On April 4, 2016, someone misappropriated the CNG checkbook and wrote two checks to Feerst, one in the sum of $6,000, which had a note on the subject line: "Barry – TRO"; and the other to Feerst in the sum of $4,000 with the note on the subject line: "Eileen Retainer." Affirmant has been informed by CNG's bank that the checks were being investigated for fraud since they had never been signed or authorized by Affirmant. Copies of those redacted checks are annexed hereto as Exhibit E.

13. On April 25, 2016, Feerst made an "emergency affirmation" to Justice Ash on the false and fraudulent representations that Affirmant was about to empty CNG's bank accounts, destroy the viability of CNG, misappropriate CNG's business and endanger termination of the License Agreement. In truth, there was no emergency whatsoever. Based upon Feerst's "emergency affirmation," Justice Ash entered an Order to Show Cause dated April 26, 2016 ("Third OTSC"), a copy of which is annexed hereto as Exhibit F. In the Third OTSC, Justice Ash specifically denied any TRO against Affirmant from entering the Restaurant and conducting the business of CNG.

14. The "emergency" hearing requested by Feerst was held on April 27, 2016 at which time Justice Ash denied the Third OTSC in all respects; Justice Ash also granted Affirmant's Order to Show Cause to the extent that David, Stern and Shteirman had to provide me with

> "keys to any changed locks, passwords to all business accounts including bank accounts, and to the otherwise restore the status quo before plaintiff's April 6, 2016 Order. Defendant shall have access to books, records, keys, moneys, safe, processing, cameras, computers and other business property utilized during Plaintiff's stay."

A copy of Justice Ash's Order dated April 27, 2016 ("April 27th Order") is annexed as Exhibit G.

15. David, Stern and Shteirman completely ignored the April 27th Order and refused to comply with its terms in any manner, shape or form whatsoever. As a result, Affirmant and counsel Shanbaum made an application to Justice Ash that resulted in the Fourth Order to Show Cause, a copy of which is annexed hereto as Exhibit A ("Fourth OTSC"). As previously stated, the hearing was scheduled for July 27, 2016 and Feerst filed the involuntary petition one day before on July 26, 2016, with the blatant and sole purpose to frustrate the Contempt Hearing. It was an obvious abuse of the bankruptcy process.

16. In furtherance of their scheme, David, Stern and Shteirman set up a separate corporation called CNG Brooklyn, Inc. ("Brooklyn") . A copy of the Certificate of Incorporation of Brooklyn is annexed hereto as Exhibit H. The incorporator is Yisechar D. Zaitschek, who is my husband David Zaitschek. It was filed with the New York State Department of State on March 22, 2016, just two weeks prior to the

5

institution of the state court lawsuit. It is obvious that their intent was to saddle CNG with all the debt and allow Brooklyn to operate the Restaurant and keep the revenue.

17. The April 27th Order specifically provided that a preliminary conference be held before Justice Ash on May 19, 2016 at 10:00 a.m. (see Exhibit G). On May 19, 2016, no one appeared in Court on behalf of the plaintiff in the state court action. As a result, Justice Ash made an order dated May 19, 2016 ("May 19th Order") that dismissed the state court action and provided that the Contempt Hearing shall survive the dismissal of the state court action. A copy of the May 19th Order is annexed hereto as Exhibit I.

## PROCEEDINGS IN THE BANKRUPTCY COURT

18. The involuntary petition was filed on July 26, 2016 and the involuntary summons was issued on July 28, 2016. However, neither the involuntary summons nor the involuntary petition was ever timely or properly served on the alleged debtor. In fact, nothing was ever done by Feerst or the petitioning creditors. Annexed hereto as Exhibit J is a copy of the court docket sheet as of the date of this application, which shows the last item was the issuance of the involuntary summons on July 28, 2016.

19. No affidavit of service has been filed and nothing else has been done with regard to the involuntary petition. Affirmant is advised by her counsel that Feerst had seven days from the filing of the involuntary petition to serve the involuntary petition and the involuntary summons. That time period expired on August 4, 2016 and the Court has not issued a supplemental involuntary summons, as my counsel has advised me is provided by F.R.B.P. Rule 7004(e), made applicable by F.R.B.P. 1010.

20. This is the same pattern as in the state court action where Feerst filed a summons with notice, but never filed a complaint and never served the summons or a complaint. Clearly, the filing of the involuntary petition was a subversion of the state court proceeding and an abuse of the Bankruptcy Court.

21. The involuntary petition lists four creditors, none of whom are <u>bona fide</u> creditors of CNG. The alleged creditors are as follows:

    (a) <u>Baruch Aryeh Stern</u> for wages in the sum of $6,079;

    (b) <u>Barry R. Feerst & Associates</u> for services rendered in the sum of $10,745;

    (c) <u>Eileen Prensky</u> ("Prensky") for loans in the sum of $100,000; and

    (d) <u>Isaac Shteirman</u> for loans in the sum of $11,000.

22. Firstly, "Baruch Aryeh" Stern is the same person as Ari Stern (defined as "Stern") in connection with the dialogue on the state court proceeding. See paragraph 7, <u>supra</u>. Stern's alleged claim apparently arises from the period of time that he, David and Shteirman were trying to steal the Restaurant from me. Justice Ash has determined that his false allegations in connection with the state court proceeding required the TRO against me to be vacated.

    (a) Stern was never an employee of the debtor. He was not hired by me to do anything; he was brought in by Shteirman to help "run the business." As is evident from the shenanigans in the state court, his role was to help steal the business from Affirmant, as opposed to helping the debtor in its business operations.

    (b) The debtor's automobiles were misappropriated, apparently one by Stern and the other by Shteirman. Two police reports (numbered 2415 and 2417) have

7

been filed with 66th precinct, 5822 16th Avenue, Brooklyn, NY 11204. The officer on the case is Detective Carreira. It appears that Stern misappropriated one of the automobiles, as traffic tickets issued by the City of New York show addresses located in and around Stern's home address. I am informed that GPS trackings show that the vehicle taken by Stern came from the debtor's premises and then was used by him personally in and around his home address.

    (c) Originally, Shteirman wanted me to go to the bank and give Stern "carte blanche" authority with regard to the debtor's bank account. However, this was never done, and for good reason. Accordingly, Stern has absolutely no claim whatsoever against CNG and his status as a creditor is totally disputed.

23. The Feerst claim for services rendered is outrageous, as everything he did was <u>against</u> the interests of CNG. Affirmant never authorized Feerst to be retained by CNG. Any services he rendered were on behalf of David, Stern and Shteirman; they should pay his bill. Feerst has no claims whatsoever against CNG. If anything, Feerst should reimburse the debtor for the unauthorized payments made from the debtor's account in the sums of $6,000 and $4,000. <u>It must be emphasized that Feerst is counsel for the petitioning creditors as well as one of the petitioning creditors himself.</u> At the very same time, Feerst was also the attorney of record for the <u>debtor</u> as plaintiff in the state court. This certainly created conflicts of interest on behalf of Feerst with regard to his various legal representations.

24. The claim by Prensky is for a loan in the sum of $100,000. Prensky was a close personal friend of Affirmant and a customer of CNG. She was a victim of

domestic violence and Affirmant was instrumental in getting help for Prensky in her marital difficulties.

(a) She came to me and said she wanted to invest some money in a business enterprise. Affirmant told her that Affirmant was in the process of negotiating to open a new location for a Carlos and Gabby's in Teaneck, New Jersey. We agreed that the money she had available would be used as an investment in the Teaneck store and that when it was up and running, Prensky would have an ownership interest for certain percentage to be determined later, based upon the other equity positions in the Teaneck store.

(b) Prensky did give me a bank check in the sum of somewhat less than $100,000 which was placed in the Teaneck store account. The proceeds were used for business expenses.

(c) <u>This money was never a loan</u>; it was a method for Prensky to invest some funds that she had accumulated and it was agreed to be an investment in the Teaneck store.

(d) During a three day weekend in late January, 2016, Prensky made a bar mitzvah for her son which lasted from Friday evening through Sunday. CNG catered all of the meals for Friday night and Saturday morning (reception and lunch) and Sunday morning at an approximate cost of $45,000. An invoice was sent to Prensky from CNG. A copy of that invoice is attached as Exhibit K.

(e) Prensky has not paid anything towards that invoice. Prensky is really a <u>debtor</u> of CNG, as opposed to be an alleged creditor.

(f) Accordingly, Prensky does not have a claim for a loan and her claim is subject to a bona fide dispute.

25. Shteirman operated a not-for-profit charitable organization named Menuchos Hanefesh located in Brooklyn, New York. The purpose of that organization was to help in need people on a "no fee" basis as a charitable entity. Affirmant was referred to Shteirman's organization by Achiezer, a charitable organization located in Far Rockaway, New York that helps people in need as a result of difficult business and personal situations. For example, Achiezer was extremely instrumental in providing for the physical, emotional and financial needs of people who were seriously affected by Hurricane Sandy in the Far Rockaway and the South Shore of Long Island area.

26. Affirmant knew about Achiezer and therefore had requested help from them. However, Achiezer said I lived in Brooklyn and referred me to Menuchos Hanefesh and Mr. Shteirman as the organization based in Brooklyn that did exactly the same thing that Achiezer did in Far Rockaway.

(a) It was represented that Shteirman was also a credit counselor who could help David and Affirmant personally with regard to our marriage difficulties and financial issues. Shteirman was consulted with regard to financial difficulties of CNG and it was he who brought in Stern to allegedly "help" CNG. As noted above, Stern's "help" was anything but that with regard to CNG.

(b) Shteirman never loaned any money to the debtor, so that his claim for $11,000 is totally without foundation. The services that he rendered through Menuchas Hanefesh were without any fee whatsoever.

(c) It also appears that Shteirman took the second automobile that was owned by the debtor. This is the subject of a report to the police in the 66th precinct (see paragraph 22 (b) herein). Similar to Stern, there are traffic tickets and GPS trackings that show the automobile in and around Shteirman's home address.

(d) In fact, Shteirman has been instructed by the New York City Police Department not to enter the Restaurant and not to interfere with the business operations of CNG. There are three separate police reports against Shteirman for harassment that have been filed with the 66th precinct. These are report numbers 2146, 011910 and 01773.

(e) If anything, the debtor has a claim against Shteirman for his participation in the scheme of trying to steal the business. Shteirman does not have any legitimate claim against the debtor and his bogus claim for $11,000 in loans is totally unfounded. Accordingly, Shteirman's alleged claim is wholly without merit.

27. Thus, all four of the claims asserted in the involuntary petition are subject to bona fide dispute. Affirmant is informed that the threshold issue of an involuntary bankruptcy petition is for the three petitioning creditors (in this case all four) to have valid claims. However, none of them have any basis and each of them is subject to a bona fide dispute. Therefore, this involuntary petition cannot be sustained.

<u>CLAIM FOR SANCTIONS</u>

28. It is easily seen from the recitation of facts herein that the petitioning creditors and their counsel have committed eggregious conduct in the filing of the involuntary petition. The involuntary petition was filed the day before the Contempt

Hearing. Affirmant is informed by her counsel that because the debtor was the <u>plaintiff</u> in the state court action against Affirmant as defendant, it would <u>not</u> be covered by the automatic stay. It was <u>not</u> an action <u>against</u> the debtor.

29. Nevertheless, it appears that state court judges who are confronted by a bankruptcy petition do not necessarily distinguish between actions <u>by</u> the debtor or <u>against</u> the debtor, so that state court may apply the stay simply because of the fact that a party to the lawsuit is involved in a bankruptcy proceeding.

30. The involuntary petition had the intended effect of stopping the state court from going ahead with the Contempt Hearing. It was simply a litigation tactic to protect David, Stern, Shteirman and Feerst, who were all the objects of the contempt motion. <u>It is not a coincidence that Stern, Shteirman and Feerst are three of the four petitioning creditors.</u>

31. It is most important to emphasize that Feerst, as counsel for the petitioning creditors, also appeared as counsel for the debtor as the plaintiff in the state court action. This anomaly has led to sanctions against such counsel for improper professional behavior. <u>In re Kujawa</u>, 2000 Bankr. LEXIS 2018; 2000 WL 33954570 (Bankr. E.D. Mo. 2000). In that case, the attorney who had previously represented the debtor, was also found to have orchestrated the involuntary petition which gave rise to sanctions against that attorney under Section 303(i) of the Bankruptcy Code. LEXIS **54-60.

32. It cannot be denied that the facts of this case clearly demonstrate that the filing of the involuntary petition was improper, had no factual basis, was meant to harass the debtor and without a doubt, constituted a litigation tactic to delay, if not to stop, the

12

Contempt Hearing. Under such circumstances, sanctions are warranted against both the petitioning creditors and their counsel. In re Meltzer, 516 B.R. 504, 513-518 (Bankr. N.D. Ill. 2014) (hereafter "Meltzer I").

33. In fact, sanctions are also available under Rule 9011, without the 21-day "safe harbor" notice, because the sanctions under Rule 9011 apply to the <u>filing of a petition</u> under the Code as an exclusion to the 21-day "safe harbor" provision (Meltzer I, 521-522 "Unlike *Rule 11*, though, the safe harbor in *Rule 9011* has an exception. *Rule 9011(c)(1)(A)* continues: 'this limitation shall <u>not</u> apply if the conduct alleged <u>is the filing of a petition</u> in violation of subdivision (b).'") Ibid. at 522 (emphasis added).

34. The Meltzer I case was further elucidated by the Court ("Metzler II") in In re Meltzer 535 B.R. 803 (Bankr. N.D. Ill. 2015) which held that the involuntary petition had been filed as a harassment mechanism and for an improper purpose, i.e., to delay an action for eviction in the state court. Ibid. at 810. Where the petitioning creditors had actually manufactured claims, as in the case at bar, that aspect clearly gives rise to sanctions for legal expenses and costs, as well as punitive damages. 535 B.R. at 810-811 and 815-820.

35. Likewise, in the case of In re Merrifield Town Center Limited Partnership, 2010 Bankr. LEXIS 4434; 2010 WL 5015006 (Bankr. E.D. Va. 2010) sanctions were awarded because the court found that the involuntary petition was filed to give a tactical advantage in a pending action in the United States District Court. The Court found that the involuntary petition was "'presented for an improper purpose' within the meaning of Rule 9011(b)(1), since its primary and immediate purpose was to derail the pending trial in the district court action." LEXIS *19 The Court found that both the petitioning

13

creditors and their counsel were jointly and severally liable for the sanction in the sum of $25,000. Ibid.

36. Accordingly, the debtor herein is entitled to sanctions in the form of repayment of the legal fees and expenses, together with punitive damages, because: (a) the filing of the involuntary petition was orchestrated by an attorney who at the same time also represented the debtor in the state court action; (b) each of the alleged petitioning creditors had claims that are subject to a bona fide dispute; (c) the filing was meant to harass the debtor and Affirmant; (d) the petitioning creditors allowed significant debt to be built up against the debtor which has hampered the debtor's business operations; and perhaps most importantly, (e) the filing of the involuntary petition was a litigation tactic to delay the Contempt Hearing, which was against three of the four petitioning creditors. Meltzer I, supra; Meltzer II, supra. Therefore, the debtor is entitled to all of its legal fees and expenses, plus punitive damages for the blatant misuse of the bankruptcy process.

## CONCLUSION

37. Affirmant has demonstrated that the involuntary petition must be dismissed. It was filed as a litigation tactic for the benefit of three of four of the petitioning creditors the day before the Contempt Hearing was scheduled. The petitioning creditors have done nothing in this case since the date of filing. All four of the claims of the petitioning creditors are subject to a bona fide dispute. The attorney for the petitioning creditors was, at the same time, counsel for the debtor in the state court action, and is himself,

14

one of the petitioning creditors. The debtor is clearly entitled to sanctions for legal fees and expenses, plus punitive damages for the egregious behavior of the petitioning creditors and their counsel.

WHEREFORE, Affirmant respectfully requests that the involuntary petition be dismissed; that the alleged debtor be awarded sanctions against counsel for the petitioning creditors and also each of the petitioning creditors, jointly and individually for all legal fees and expenses incurred by the debtor with regard to the involuntary petition; and further for sanctions in an amount to be determined by this Court, together with such other and further relief as may be proper.

Dated:    New York, New York
          September 16, 2016

_____  9/16/16
Deena Zaitschek, Sole Manager
And Member of the Alleged Debtor

As to the law expressed in paragraphs 31 through 36:

M. DAVID GRAUBARD, ESQ.
Attorney for Alleged Debtor

By: _____
M. David Graubard (MDG 5442)
71-18 Main Street
Flushing, NY 11367
(212) 681-1436