BARRY R. FEERST & ASSOCIATES (BRF3836)
194 South 8th Street
Brooklyn, NY 11211
t(718) 384-9111
f(718) 384-5999

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
In re:

                            Chapter 7

                            Case No.: 16-43278

CNG GOODS LLC,

                    Debtor.
---------------------------------X

## <u>DECLARATION IN OPPOSITION TO MOTION FOR SANCTIONS</u>

    BARRY R. FEERST declares the following pursuant to 28 U.S.C. §1746:

<u>BACKGROUND</u>

    1. I am a Pro Se Creditor and I make and submit this declaration in opposition to Debtor's motion for sanctions. The other Creditors, have agreed with the position stated herein.

    2. In order to refute the misleading and dishonest factual allegations and conclusions regarding the proceedings in the state court action made by Deena Zaitschek ("Deena") and her Counsel, the actual and documented procedural history of the State court action is as follows:

    a)    I was the attorney for CNG Foods LLC("CNG") in a State Court action commenced by CNG against Deena.

    b)    Based upon the disclosures made by controlling members of CNG, including Deenas spouse David Zaitschek("David), I sought and obtained a temporary restraining order ("TRO') barring Deena

-1-

from entering the CNG premises, since there was a genuine danger that she would empty the corporate bank accounts, which would result in payroll not being met and closure of the business. The Order to Show Cause dated April 6, 2016 including the affidavits of Adam Kay, David and Ari Stern submitted in support therein are attached as composite Exhibit "1." The State Court action was commenced by CNG against Deena, a purported principal of CNG, based on the hand written authority(attached within composite Exhibit "1."), given by CNG to a management group, who were charged with the operation of CNG.

c)   As disclosed by the supporting affidavits, the central purpose of the request for Court intervention was to prevent Deena from systematically looting CNG since she improperly misappropriated funds while simultaneously failing to compensate CNG employees and otherwise running the business into the ground.

d)   Moreover, Deena's actions placed CNG in danger of its franchisor (JEWMEX FOODS) terminating its licencing agreement with CNG. Deena repeatedly violated the terms and provisions of CNG's franchise agreement and ignored the licensing fees due the Franchisor. Letters from the Franchisor dated February 9 2016 and May 9 2016 (Affidavit of Adam Kay, owner of Jewmex Foods is attached within composite Exhibit "1.") are attached as Exhibit "2." The danger that Deena imposed on CNG as a whole and its fourteen employees whose livelihoods depended on its continuance, was real.

e)   Thereafter, On April 19, 2016 Deena filed an Order to Show Cause to vacate the TRO issued on April 6, 2016. Deena argued that the TRO should be vacated because she was not served with notice that a TRO application was being sought( even though it was an emergency application) In addition, as in the instant case, Deena also sought an order sanctioning CNG for its filing of the TRO.

f)   On April 26, 2016 I filed an Order to Show Cause in which I sought to have the Court reinstate its April 6 2016, TRO barring Deena from entering the CNG

-2-

premises.

g)  On April 27, 2016, The Court issued orders with
    respect to each of the motions mentioned above that
    denied CNG's Order to Show Cause and granted Deena's
    to the extent that CNG was required to restore
    Deena's access to CNG and to the status quo that
    existed, before the Court granted Plaintiff's April
    6,2016 TRO[1]. In addition the order stated that "PC
    shall be held on May 19, 2016". A copy of the April
    27, 2016 Order is attached as Exhibit "3".

h)  CNG did not appear for the scheduled PC on May 19,
    2016, and the Court issued an Order on May 19, 2016
    dismissing the action due to CNG's failure to appear
    and further Ordered that Deena's motion for contempt
    against the individual parties who alleged to be
    acting for CNG returnable July 27, 2016 survive. A
    copy of the Order is attached as Exhibit "4".

i)  Deena, who by the April 27, 2016 Order, was restored
    to her status in CNG filed further papers on May
    6,2016 in support of her July 27, 2016 motion to
    punish for contempt. As her papers make crystal
    clear, Deena sought damages against **CNG** in the
    amount of $10,000 per day from April 27, 2016 until
    the July 27, 2016 hearing date( 3 months) which is
    roughly $1,000,000.00. A copy of Deena's Order to
    Show Cause is attached as Exhibit "5".

j)  The creditors then concluded that the situation had
    worsened. Eileen Prensky ("Prensky") would never be
    repaid any part of the $100,000.00 she loaned to
    Deena and Adam Kay, principal of Franchisor Jewmex,
    filed a supporting affidavit in the State Court
    action confirming the management groups
    authority,(attached within composite Exhibit "1.")
    but did not succeed in convincing Deena to end the
    chaos at CNG.

k)  Thereafter the involuntary petition was filed in
    order to protect the unsecured creditors of CNG as
    it is obvious and apparent that Deena's sole

---

[1]It is likely that the State Court recognized that the litigation
was being used as a means for Deena and her husband, David, to litigate
control of CNG while they litigated their matrimonial issues.

intention was to obtain a judgment against CNG, her own enterprise, in the amount of $1,000,000.00. Such a money judgment would give her control over CNG's assets and leave the creditors with nothing[2].

l)    To further demonstrate Deena's objective, an email from Deena's counsel in the State Court  case concedes that Deena is seeking money damages from CNG, her own company. A copy of the  email dated February 15, 2017 is attached as exhibit "7".


## ARGUMENT

3. As demonstrated above, the filing of the instant petition was filed in good faith and was necessary in order to protect the creditors from Deena seizing all of the assets of CNG, by way of her contempt motion, and then leaving CNG with no assets with which to pay its creditors- A shrewd maneuver designed to eliminate the creditors claims.

4. Consequently, the court must not sanction the good faith filing of the involuntary petition by the creditors under Bankruptcy Rule 9011, or 28. U.S.C § 1927 or the Court's inherent authority through 11 U.S.C § 105(a).

5. "The Second Circuit has held that "[w]hether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination." Key Mechanical Inc. v. BDC 56

---

[2] Although there is still a substantial balance due for legal services I provided for CNG, with Deena having retaken control of CNG, there is no prospect of the fees being paid. I therefore moved to be relieved as counsel for CNG which the State Court granted over the opposition of Deena's attorney. The February 16, 2017 Order relieving me as counsel for CNG is attached as Exhibit "6."

LLC (<u>In re BDC</u> 56 LLC), 330 F.3d 111, 118 (2d Cir. 2003). The
burden is on petitioning creditors to prove compliance with the
jurisdictional requisites of Section 303". See <u>In re Palace
Oriental Rugs</u>, 193 B.R. 126, 128 (Bankr. D. Conn. 1996) (citing 2
Collier on Bankruptcy ¶ 303.15[7], p. 303-80 (15th ed. 1995)).<u>In re
Jacques</u>, 2010 Bankr. LEXIS 2499, at *9.

    6. Bankruptcy code § 303(b) provides that an involuntary case
may be commenced against a person by three or more creditors whose
claims aggregate at least $13,475.00 more than the value of any
lien on the debtor's property securing the claims and whose claims
are not contingent as to liability or subject to a bona fide
dispute as to liability or amount. 11 U.S.C. § 303(b)(1). If the
petition is challenged, involuntary relief shall be granted if the
debtor is generally not paying his debts (other than debts subject
to a bona fide dispute as to liability or amount) as they become
due. 11 U.S.C. § 303(h)(1).

    7. Section 303(b) provides that if an alleged debtor has
twelve or more creditors, to commence a Chapter 11 involuntary
proceeding three or more creditors must join in the petition and
qualify as creditors, and they must have aggregate claims of
$5,000. 11 U.S.C. § 303(b)(1) (Supp. 1985). If the alleged debtor
has less than twelve creditors, **at least one creditor with a claim
of $5,000 is required before an involuntary petition can be filed.**
11 U.S.C. § 303(b)(2) (1979).<u>United States Fid. & Guar. Co. v DJF</u>

Realty & Suppliers, Inc., 58 BR 1008, 1013.

8. Here, the involuntary petition alleges that: (1) the petitioning creditors are eligible to file the petition under 11 U.S.C. § 303(b); (2) CNG is a Corporation against whom involuntary relief may be entered; and (3) CNG is not generally paying it's debts as they become due except to the extent such debts are subject to a bona fide dispute as to liability or amount.

9. The Petition also states the nature of each of the four petitioning creditors claims and that their claims aggregate $128,624.00. These allegations are plausible on their face and clearly state a claim for involuntary relief under the bankruptcy code.

10. "As a threshold matter, there is a presumption that an involuntary petition was filed in good faith. See, e.g., U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc., 58 B.R. 1008 (N.D.N.Y. 1986); In re E.S. Professional Services, Inc., 335 B.R. 221 (Bankr. S.D. Fla. 2005).

11. Good faith is exemplified in this case by the aforementioned compliance of the petitioning creditors with the requisites of Section 303(b). See, In re Jacques, 2010 Bankr. LEXIS 2499, at *22.

12. Here, the involuntary petition was filed in good faith as there is no dispute that the petitioning creditors complied with the requisites of § 303(b). Petitioning Creditor Eileen Prensky's

-6-

("Prensky") claim for a loan made to CNG in the amount of $100,000.00 is not subject to a bona fide dispute as to its validity nor its amount. Deena admits the existence of the loan when she stated "the claim by Prensky is for a loan in the sum of $100,00.00...she was a victim of domestic violence and Affirmant was instrumental in getting help for Prensky in her marital difficulties." See, ECF Doc 4 paragraph 24  pages 9-10.

13. Deena further admits that "Prensky did give me a bank check in the sum of somewhat less than $100,00.00...The proceeds were used for business expenses". See, ECF Doc 4 paragraph 24 c on page 9.

14. In an effort to distract from the unavoidable, Deena now argues that since Prensky owes CNG $45,000.00 for a bar mitzvah that CNG catered for her, the claim is therefore subject to a bona fide dispute. This argument is of no import, all that Deena is really saying is that CNG may have a counterclaim against Prensky for not paying CNG $45,000.00 for a catering event.

15. In sum, Deena admits that the debt owed to Prensky is not subject to a bona fide dispute as to its validity and as to the amount owed. Even assuming for the sake of the argument that Prenksy has a balance due for services CNG rendered, that balance does not render the $100,000.00 claim subject to a bona fide dispute as to the amount of the debt; the loan and the services have nothing to do with each other and is therefore of no legal

significance.

16. Accordingly, since the petition and Deena's Certification In Support Of Motion To Dismiss Involuntary Petition and For Sanctions(ECF Doc 4) both confirm that the $100,000.00 claim is not subject to a bona fide dispute as to its validity or amount, the involuntary petition satisfies the requirement that there be at least "one" creditor with a claim above the $45,000.00 threshold, irrespective of Deena's contention that the other remaining petitioning creditors claims are subject to a bona fide dispute.

THE APPLICABLE STANDARD

17. CNG bears the burden of showing, by a preponderance of the evidence, that the involuntary petition was filed in bad faith. See, In re Jacques at *22. The case in In re Jacques further illustrates that the petition was not filed in bad faith. In re Jacques the Debtor filed an Answer with a Counterclaim alleging that the involuntary petition was filed in bad faith. The court held that the petition was not filed in bad faith. "the Debtor fails to adequately support this conclusory allegation therein, stating only that the petition was filed in bad faith based upon, inter alia, the petitioners' "disregard of the Bankruptcy Code and their failure to utilize their state court remedies." Id.

18. Finding that the petitioning creditor did not "disregard ... the Bankruptcy Code," but rather complied with its provisions, the Court in In re Jacques then went on to address the Debtor's

motion. "In the Motion, the Debtor relies upon the first test of bad faith..., alleging that "[t]he petitioner's filing equates to an improper purpose of debt collection... the Second Circuit has noted that under the improper purpose test, "bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." <u>Lubow Machine Co., Inc. et al, v. Bayshore Wire Products Corp.</u>, 209 F.3d at 105 (citation omitted). An involuntary petition filed with an improper purpose is evidence that the petition was filed in bad faith. See, e.g., <u>In re Grossinger</u>, 268 B.R. 386 (Bankr. S.D.N.Y. 2001) (use of involuntary petition to obtain leverage in settlement of disputed claim evidences bad faith)." <u>Id.</u> The court further stated that "The burden of proving bad faith by a preponderance of the evidence is a heavy one, <u>In re Reveley</u>, 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992) (citations omitted), and the Debtor has failed to carry its weight." <u>Id.</u>

19. In this case, CNG has offered little more than conclusory allegations and no evidence from which this Court could make a finding that the involuntary petition was filed with ill will, malice, the intent to embarrass or harass CNG, or otherwise in bad faith.

20. Accordingly, because the involuntary petition was filed in good faith, and since the petitioning creditor complied with the applicable requisites of Section 303(b), the Debtor's Motion,

insofar as it seeks dismissal of the involuntary petition, should be DENIED. See, In re Jacques, 2010 Bankr. LEXIS 2499, at *22-24.

21. For all the reasons above, the petition was demonstrably filed in good faith because the petitioning creditors complied with the applicable requisites of Section 303(b) and CNG cannot demonstrate that the purpose of the filing was for an improper purpose.

22. CNG's argument that the petition was filed in order to avoid the state court action and therefore the petition was filed in bad faith is erroneous.

23. Because as demonstrated above, the petition complied with the applicable requisites of Section 303(b) and was not filed in bad faith, the court should not even address the issue of sanctions.

24. In deciding the appropriate sanctions under Rule 9011, courts may consider whether the improper conduct was willful or negligent, whether it was part of a pattern of activity or an isolated event, whether it infected the entire pleading or only one particular count or defense, whether the violator engaged in similar conduct in other litigation, whether it was intended to injure, the effect that the improper conduct had on the judicial process in time and expense, and whether the responsible person is trained in the law. When contemplating the amount of a monetary sanction, the court may also consider what is necessary to deter

the violator from repeating the improper conduct in the same case in light of his financial resources and to deter similar activity by other litigants. Fed. R. Civ. P. 11 advisory committee's note (1993).

25.    In <u>In re Reyes</u>, although the court dismissed a debtor's Chapter 11 petition based on bad faith, the court nevertheless declined to impose sanctions on the debtor. <u>In re Reyes</u>, 2015 Bankr. LEXIS 2575. The court in deciding that the debtor filed the case in bad faith, stated that as "a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." <u>In re HBA East, Inc.</u>, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) (citations omitted); accord <u>In re Wally Findlay Galleries (New York), Inc.</u>, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) (dismissing chapter 11 case because "[t]he debtor is unable to propose a meaningful plan of reorganization until its litigation . . . is resolved [and] [t]hus, it is evident that the debtor seeks to use this court not to reorganize, but to relitigate. This is an impermissible use of Chapter 11 of the Bankruptcy Code."). <u>Id.</u> at 15. Turning to the facts of the case the court went on to say that "Here, the debtor filed the bankruptcy case solely as a litigation tactic to try the dispute in a forum he deemed more favorable. Accordingly, the Court concluded that the

debtor filed the case in bad faith, and dismissed it pursuant to 11

U.S.C. § 1112(b). Id at 15-16.

26. After the court dismissed the case based on the

bad faith filing of the debtor the court declined to

sanction the debtor. The court stated:

"assuming without deciding that the standard of
objective bad faith needed to support dismissal of the
petition is the same as the standard to impose sanctions
under Rule 9011. Nevertheless, several of the cited
factors weigh against imposing sanctions. Although the
debtor and DeLaurent  filed the petition for an improper
purpose, they were not seeking  to delay or harass Simon
or anyone else. To the contrary, they were trying to
expedite the determination of the debtor's rights. The
debtor is on public assistance and desperately needs a
place to live. The debtor, though more probably
DeLaurentis, clung to the sincere if misguided belief
that Simon's position as a member of the New York State
Assembly and the Assembly's Judiciary Committee would so
affect the Surrogate as to preclude an impartial
decision. The fault was not raising the issue with the
Surrogate's Court, and instead, filing the bankruptcy
case and removing the litigation to this Court as a means
of avoiding the perceived bias. Furthermore, the improper
conduct was not intended to injure anyone, and is not
likely to recur. It is true that certain considerations
also weigh in favor of sanctions, including a [*21]
monetary award. DeLaurentis is a lawyer who should have
known better. The filing of the case followed by the
removal of the Surrogate's Court proceedings resulted in
the time and expense necessary to undo what was done.
Finally, other litigants must be deterred from engaging
in the same improper conduct. Nevertheless, in light of
all of the circumstances, including the honest though
mistaken motivations behind the filing of the bankruptcy
case and the limited effect it ultimately had on the
Surrogate's Court proceedings, I decline in the exercise
of my discretion to award any sanctions under Rule 9011."
In re Reyes, 2015 Bankr. LEXIS 2575, at 19-21.


27. Here, the involuntary petition was not filed in bad faith.

To the contrary, the filing of the involuntary petition was the only way the creditors could protect their claims based on Deena's maneuvering in the State court action.

28. Rule 9011 is composed of two prongs. The first prong prohibits attorneys and parties from filing suits without sufficient justification. This aspect of the rule is evaluated by a reasonableness standard. In re Turner 80 Bankr. 618, at 623. The second prong of Rule 9011 proscribes actions undertaken for improper purposes. It appears that bad faith may be found if either improper motivation or inadequate investigation is demonstrated. Snyder, Commercial Bankruptcy Litigation § 5.14 at 5-82 (1990). The Rule 9011 standard appears to be all encompassing and seems to "ensure that all pertinent indicia of bad faith are explored." In re KP Enterprise, 135 Bankr. 174, at 180. In re Reveley, 148 BR 398, 407-408 [Bankr SDNY 1992].)

29. The court in In re Reveley further elucidated the first prong "With respect to the improper purpose prong, courts have excused petitioners from a bad faith finding where the improper purpose was not the sole reason for the filing. Petralex Stainless, 78 Bankr. 738 (court held that filing to circumvent a state court ruling is not per se improper, where petitioner also had legitimate reasons for filing); Turner, 80 Bankr. at 627 (although creditors used bankruptcy petition partly to obtain "potential leverage," they were not in bad faith where they were primarily motivated by

their legitimate goals). <u>In re Reveley</u>, 148 BR 398, 408 [Bankr SDNY 1992].

30. The court further explained that "To satisfy this prong of the rule, the petitioning creditors and their counsel must make a reasonable inquiry into the existence of the elements necessary for filing an involuntary petition. See <u>West Side Community Hosp</u>., 112 Bankr. at 259. Thus, there is no bad faith where the petitioners support their positions with reasonable arguments. See <u>Turner, 80 Bankr</u>. at 625 (no bad faith under Rule 9011 standard where the petitioners had an arguable case); <u>West Side Community Hosp.</u>, 112 Bankr. at 259 (although the court determined that one of the elements for involuntary filings was lacking, the petitioners had strong evidence to support their position." <u>In re Reveley</u>, 148 BR 398, 408 [Bankr SDNY 1992].

31. CNG's sole argument is that the petition was filed in bad faith in order to avoid the State court contempt proceeding. As the law above makes clear, the filing of the instant petition was not made in bad faith because the creditors had a legitimate reason for filing based on Deena's State court action in which she sought a windfall, by having the State court compel CNG, in which she is an owner, to pay her, thereby leaving CNG without assets and the creditors without any financial recourse.

32. In <u>In re Reyes</u> the court explained that "Section 1927 authorizes a court to award attorney's fees and other excess costs

and expenses against an attorney or other party authorized to practice before the courts who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. It imposes an obligation on attorneys to avoid dilatory tactics throughout the entire litigation, and "[b]ad faith is the touchstone of an award under this statute." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991). In re Reyes, 2015 Bankr. LEXIS 2575, at * 23.

33. "A court may also impose sanctions under 11 U.S.C. § 105(a) pursuant to its inherent power, which "derives from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol, 194 F.3d 323, 336 (2d Cir. 1999) (quoting Chambers v. Nasco, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Id "One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Int'l Bhd. of Teamsters, 948 F.2d at 1345 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)). Id

34. The only meaningful difference between an award made

under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both. Schlaifer, 194 F.3d at 336 (quoting Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)). Id

35. The court further explained that courts in the Second Circuit construe § 1927 "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Mone v. Comm'r of Internal Revenue, 774 F.2d 570, 574 (2d Cir. 1985) (internal quotation marks omitted); accord Romeo v. Sherry, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004). Id Likewise, the Supreme Court has admonished that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," Chambers, 501 U.S. at 44, and "great caution." Id. at 43 (internal quotation marks omitted). Id.

36. The court went on to explain that moreover, "to impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer, 194 F.3d at 336)); accord Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc., No. 03 Civ 9623 (JFK), 2005 U.S. Dist. LEXIS 17977,

2005 WL 2036033, at * 5 (S.D.N.Y. Aug. 23, 2005). <u>Id</u>

37. Notably, the "'[t]he test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.'" <u>Pac. Elec. Wire & Cable Co.</u>, 2005 U.S. Dist. LEXIS 17977, 2005 WL 2036033, at *5 (quoting <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 776 F.2d 383, 390 (2d Cir. 1985)). Using this test the court denied sanctions under 28 U.S.C. § 1927 or the Court's inherent authority because it held that the filing of the case was not done in bad faith within the meaning of the sanctions authorities and because it found that the filers were not seeking to delay or harass the litigants involved in the state Court proceedings. Instead, the case was filed and the proceedings were removed based on their honest belief that the debtor could get a quicker and fairer resolution of the debtor's claim to the Property in this Court. <u>In re Reyes</u>, 2015 Bankr. LEXIS 2575, at *21-24.

<u>CONCLUSION</u>

38. Here, the petitioning creditors filed the petition based on the real and by now documented, belief that the filing of the petition was necessary to prevent CNG from becoming a private pocketbook for Deena, leaving the creditors with no recourse. Moreover, the State Court action was never stayed by the filing of the petition. In addition, the filing was not intended to harass the Debtor but rather it was done to protect their claims against Debtor.

-17-

39. Finally, It must be noted that CNG's Certification In Support Of Motion To Dismiss Involuntary Petition And For Sanctions( ECF Doc 4) is disingenuous and misleading. At ECF Doc 4 page 7, paragraph 22, Deena dissembles when she claims that "Firstly, ...David and Shteriman were trying to steal the restaurant from me. Justice Ash has determined that this false allegation in connection with the State court proceeding required the TRO against me to be vacated."  However, as stated earlier Judge Ash made no factual determinations, but rather granted Deena the relief she sought based on the CNG's non appearance at a preliminary conference.

40. Deena states with no basis that the Court made factual findings in its Orders when in fact the Court did not. Moreover, when it became clear that Deena had regained  control of CNG, the necessity of filing an involuntary petition in bankruptcy court became imperative.

41. Instead of filing an action on behalf of CNG and herself against the alleged individuals who purported to act on behalf of CNG, Deena continued with the order to show cause for  civil contempt against "CNG FOODS LLC".

42. It was obvious that any monetary sanctions imposed by the State court would only injure CNG and eliminate CNG's ability to pay it's creditors which is the reason why the involuntary petition was filed.

43. Deena's allegation that the involuntary petition was frivolously filed and that the creditors never intended to follow through with the action is at best speculative. In fact, shortly after the petition was filed, creditors attempted to serve CNG with the involuntary petition(See, Exhibit "8"). However, the attempted service was not effective and CNG was never served.

44. Based on the foregoing clear and convincing documentary evidence that the conduct of Deena in the State Court action was an ingredient in a scheme to gain preferred status as a judgment creditor of CNG and her motion should be denied.

WHEREFORE, it is requested that Deena's motion be denied.


_____/s_____
BARRY R. FEERST


Dated: Brooklyn, New York
       March 7, 2017